UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-cv-00652-FDW-DSC

| | |
|---|---|
| KANDICE L. LIGHTNER, ET AL., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> LINCOLN LIFE ASSURANCE COMPANY ) <br> OF BOSTON F/K/A LIBERTY LIFE ) <br> ASSURANCE COMPANY OF BOSTON, ET ) <br> AL., ) <br> ) <br> Defendants. ) <br> ) | ORDER |

THIS MATTER is before the Court on Defendant Dionte Long's ("**Long**") Motion to Dismiss, (Doc. No. 26), and Plaintiffs Kandice L. Lightner, Jaylin R. Lightner, Barbara Lightner, Maurice Lightner, Bernadette L. Lightner, Page R. Lightner, Jr., and Bridget Lightner (collectively, "Plaintiffs") Motion for Partial Summary Judgment, (Doc. No. 30). These motions are fully briefed and ripe for review. For the reasons stated herein, Long's Motion is DENIED, and Plaintiffs' Motion is GRANTED.

## I. Background

Marcella Thrash ("Thrash") was an Account Manager for Colliers International USA, LLC ("Colliers") from 2013 until her death on April 10, 2017. As part of her employment, Thrash enrolled in several different benefits plans through Colliers, which had accrued and vested, including: Basic Life Insurance valued at $98,000, Optional Life Insurance valued at $90,000 (also known as "Supplemental Life Insurance"), a Basic Accidental Death and Dismemberment policy valued at $98,000, and Colliers's 401k Plan valued at $69,640.58 (collectively, "Thrash's

1

Benefits"). (Doc. No. 1, p. 4). Colliers sponsored Thrash's Benefits. Id.; see also Doc. No. 1-1, pp. 1, 47–49. However, Defendant Lincoln Life Assurance Company of Boston ("Lincoln Life"), formerly known as Liberty Life Assurance Company of Boston, administered Thrash's Basic Life Insurance and Option Life Insurance (collectively, "Group Life Insurance Policy") until Lincoln Life was acquired by The Lincoln Life National Life Insurance Company (which was incorrectly identified as "Lincoln National Life Insurance Corporation"). (Doc. No. 1, p. 4; see also Doc. No. 16, p. 15–16). Principal Life Insurance Company ("Principal Life") administered Colliers's 401k Plan. Id. Thrash designated Long as the 100% beneficiary of her Basic Life Insurance. (Doc. No. 1, p. 5). She also designated Long as the 90% beneficiary and Plaintiff Bernadette Lightner ("Bernadette") as the 10% beneficiary of her Optional Life Insurance. Id. At the filing of the Complaint, Lincoln Life had not paid benefits to anyone, and Principal Life had not disbursed the balance of funds under Colliers's 401k Plan. Id. at 6.

On April 10, 2017, Long stabbed Thrash and killed her. Id. at 5. However, Long was adjudicated not guilty by reason of insanity. Id. In addition to Long, Thrash's mother, Plaintiff Barbara J. Lightner; sisters, Plaintiffs Bernadette Lightner and Bridgett Lightner; brothers, Plaintiffs Maurice Lightner and Page R. Lightner; niece, Plaintiff Kandice L. Lightner ("Kandice"); and nephew, Plaintiff Jaylin R. Lightner ("Jaylin"), survived her. Id.

Thrash's will was probated on April 18, 2017. Id. at 6. Therein, her estate was bequeathed to Long if he survived her. Id. If he did not, it was bequeathed to any of Long's living issue in equal shares per stirpes. Id. Furthermore, if Long did not have any living issue, the estate was to be distributed to the issue of Kandice and Jaylin. Id. Should none of these named beneficiaries survive Thrash, her will named "those who would take from [her] as if [she] were to die without a

2

will, unmarried and the absolute owner of [her] residuary estate, and a resident of the State of North Carolina." Id. Long does not have living issue. Id.

## II. Procedural History

In a previous case, this Court held Plaintiffs commenced this action on December 7, 2021, seeking declaratory relief that Long is not entitled to any benefits of Thrash's insurance policies or 401K proceeds and instead those benefits should be received by Plaintiffs as other beneficiaries under the policies, pursuant to Thrash's will, or as if Thrash died without a will. (Doc. No. 1). The Complaint also asserts a claim for Tortious Claim Practices against the Lin Defendants The Lincoln National Life Insurance Company, Lincoln Life Assurance Company of Boston, and Lincoln National Corporation ("Lincoln Defendants") and alleges these Defendants improperly handled the claims for benefits under the Policy. The Lincoln Defendants answered and filed a counterclaim against Plaintiffs and a cross-claim against Long for Interpleader to resolve the competing claims to the payable proceeds pursuant to Thrash's Basic Life Insurance and Optional Life Insurance. (Doc. No. 16, pp. 15–20). The Lincoln Defendants also moved to deposit their admitted liability to the registry of the Court. (Doc. No. 16). Having admitted liability in the amount of $286,000 and obtained Plaintiffs' consent, the Court granted Lincoln Defendants' Motion for Leave to Deposit Admitted Liability and dismissed all claims alleged in this action against these Defendants with prejudice. (Doc. No. 23). Principal Life and Long filed their answers on February 10, 2022, and March 21, 2022, respectively. (Doc. No. 21; Doc. No. 24).

On June 1, 2022, Long filed a Motion to Dismiss Plaintiffs' Claims Pursuant to Rule 12(b)(6). (Doc. No. 26). The matter is ripe for disposition. Plaintiffs have moved for partial

3

summary judgment, and that matter is also ripe for disposition. The Court addresses these motions in turn.

### III. Standard of Review

The parties present competing motions to dispose of the claims in their favor. Long's motion to dismiss seeks dismissal of Plaintiffs' declaratory judgment and tortious claim practice claims. Because the Complaint appears to only assert the tortious claim practice against the Lincoln Defendants, who have been dismissed, that portion of the Motion to Dismiss is moot.[1] As to Plaintiffs' declaratory judgment claim, Long contends dismissal is appropriate because: 1) this Court lacks subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2), and (h)(3), and the Probate Exception; 2) Plaintiffs lack standing and are not the real party in interest; 3) the claim is barred by the doctrine of res judicata; and 4) Plaintiffs fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs move for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure and contend the Court should distribute the benefits to them because the undisputed facts demonstrate Long killed Thrash and therefore Long cannot benefit from her death as a matter of law. In evaluating these motions, the standard of review is well-settled.

A. *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)*

"'Subject-matter jurisdiction defines the court's authority to hear a given type of case'; it represents 'the extent to which a court can rule on the conduct of persons or the status of things.'"

---

[1] Plaintiffs allege the Lincoln Defendants "improperly handled the claims for benefits under the Policy set forth herein above, all to the detriment of one or more of the Plaintiffs, causing them damage in the amount of more than $75,000.00." (Doc. No. 1, p. 8). However, all claims alleged against The Lincoln National Life Insurance Company, Lincoln Life Assurance Company of Boston, and Lincoln National Corporation were dismissed with prejudice, and therefore this claim is no long before the Court. (Doc. No. 23).

Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) (citations omitted) (quoting United States v. Morton, 467 U.S. 822, 828 (1984); Subject-Matter Jurisdiction, Black's Law Dictionary (8th ed. 2004)). Unless and until a court is convinced it has jurisdiction, it may not rule on a case's merits. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–94 (1998). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue[] and may consider evidence outside the pleadings without converting the proceeding into one for summary judgment." Richmond, Frederisksburg, & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

B. *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)*

Complaints must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss [for failing to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Courts will ignore all "legal conclusions" alleged in the complaint and assume all factual allegations are true. Id. at 678–79. Then, courts will consider all the factual allegations to determine if the claim is "plausible"—i.e., whether "the plaintiff plead[ed] sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "Determining whether a complaint states a plausible claim . . . requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

*C. Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56*

Under Rule 56, a court may award summary judgment to the moving party only if it shows that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In doing so, the Court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to . . . the nonmoving party." Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 565 n.1 (4th Cir. 2015) (internal quotation marks omitted). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Jacobs, 780 F.3d at 568 (internal quotation marks omitted). "Thus, at the summary judgment phase, the pertinent inquiry is whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Variety Stores, Inc. v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018) (cleaned up).

### IV. Analysis

**A. Motion to Dismiss**

Long enumerates multiple reasons why this Court should dismiss the claims against him with prejudice. The Court will address each argument in turn, albeit in a slightly different and more logical order than presented in the motion and briefs. As an initial matter, the Court concludes Long waived any argument related to this Court's lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. Rule 12(b)(2) provides "lack of personal jurisdiction" as a defense. However,

[a] party waives any defense listed in Rule 12(b)(2)–(5) by:

6

> (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); *or*
> (B) failing to either:
>    (i) make it by motion under this rule; *or*
>    (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

Fed. R. Civ. P. 12(h)(1) (emphasis added). Thus, under the Federal Rules of Civil Procedure, Long was required to assert the defense of personal jurisdiction in his first defensive response, whether it was his answer or a 12(b) motion. Here, Long's first defensive response was his answer. (Doc. No. 24). Long did not assert Rule 12(b)(2) as a defense in that pleading, and it is therefore waived pursuant to Rule 12(h)(1).[2]

1. Subject Matter Jurisdiction

Long claims this Court lacks subject matter jurisdiction based on Federal Rules of Civil Procedure 12(b)(1) and the "Probate Exception." (Doc. No. 26, p. 1). Specifically, he contends the Court has neither federal question jurisdiction nor diversity jurisdiction over the claim for declaratory judgment.

A federal court may not hear actions over which it does not have subject-matter jurisdiction and must dismiss them. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "The judicial Power shall extend to all Cases, in Law and Equity, arising under . . . the Laws of the United States." U.S. Const., art. III, § 2, cl. 1; see also 28 U.S.C. § 1331. Commonly called "federal-question jurisdiction," federal courts have subject matter jurisdiction over cases where "federal law creates the cause of action asserted." W. Va. State Univ. Bd. of Governors v. Dow Chem. Co., 23 F.4th 288, 307 (4th Cir.

---

[2] However, even without waiver, this Court would properly have personal jurisdiction over Long. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.").

2022). "Federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).

In their complaint, Plaintiffs state their case arises "under 29 U.S.C. § 1002." (Doc. No. 1, p. 2).[3] They assert "[Thrash's] [B]enefits are considered an employee welfare benefit plan organized and subject to the Employee Retirement Income Security Act ("ERISA"), ERISA, 29 U.S.C. Section 1001, et seq. and the regulations promulgated thereunder." Id. at 4. Also, Plaintiffs allege, "Collier is considered the plan administrator for the Colliers 401k Plan under ERISA because it is named the plan administrator in the Plan, or, alternatively, it is the employer sponsoring the Plan and therefore is the default plan administrator under ERISA § 3(16), 29 U.S.C. § 1002(16)." Id. at 5. These statements are "repeat[ed], reiterate[d], and reallege[d]" under Plaintiffs' claim for relief. Id. at 6–7. Plaintiffs request this Court to declare, *inter alia*, "Defendant Long is not entitled to any [of] [Thrash's] [B]enefits" and "the full benefits of said Policy shall be received by [Thrash]'s named beneficiaries under [her] Will" because of "the state *and/or federal common law* doctrine that 'no person should be permitted to profit from his own wrong' . . . ." Id. at 7 (emphasis added).

Furthermore, the complaint alleges Thrash was an employee of Colliers. As an employee, she enrolled in several different insurance benefits through Colliers, which sponsored and maintained those benefits. Indeed, the Group Life Insurance Policy itself notes it "is delivered and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee

---

[3] The Court notes that the standard of review for a 12(b)(1) motion is different from the standard of review for a 12(b)(6) motion. Therefore, the court is not required to disregard legal conclusions when considering subject matter jurisdiction.

8

Retirement Income Security Act of 1974 (ERISA) and any subsequent amendments." (Doc. No. 1-1, p. 1). Also, Colliers is the named administrator of the 401k Plan.

"[S]ubchapter [I] shall apply to any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce . . . ." 29 U.S.C. § 1003.[4] An "employee benefit plan" is "an employee welfare plan or an employee pension benefit plan or a plan which is both . . . ." Id. § 1002(3). In pertinent part, an "employee welfare benefit plan" is "any plan, fund, or program . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing its participants or their beneficiaries, through the purchase of insurance . . . benefits in the event of . . . accident [or] . . . death . . . ." Id. § 1002(1). An "employee pension benefit plan" is

> any plan, fund, or program . . . established or maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . .

Id. § 1002(2)(A).

Although it certainly could be more straightforwardly articulated, Plaintiffs' complaint alleges Thrash's Benefits qualify as an ERISA-governed plan, thereby subjecting it to ERISA's provisions, including the civil enforcement remedies provided under 29 U.S.C. § 1132(a)(1)(B). (See Doc. No. 27, p. 8–9). Here, Plaintiffs have asserted a claim arising under federal law, hence giving this Court subject-matter jurisdiction.[5]

---

[4] Subchapter I, captured "Protection of Employee Benefit Rights," encompassed § 1132.

[5] Alternatively, this Court has subject matter jurisdiction over Plaintiffs' declaratory judgment action via the Doctrine of Complete Preemption. "The jurisdictional doctrine of complete preemption . . . provide[s] a basis for federal jurisdiction[] where 'Congress "so completely preempt[s] a particular area that any civil complaint raising this

9

Long further contends this Court does not have subject matter jurisdiction because Plaintiffs' claims are precluded by the "Probate Exception" and are moot. Neither argument is persuasive, and the Court rejects them.

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Marshall v. Marshall, 547 U.S. 293, 311–12 (2006). This case does not pertain to the probate or annulment of a will, the administration of an estate, or disposal of property in the custody of a state probate court. Rather, it pertains to the disbursement of funds under ERISA-governed plans that have been deposited with this Court, and thus falls outside of the Probate Exception.

---

select group of claims is necessarily federal in character[.]"'" Sonoco Products Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 371 (4th Cir. 2003) (third alteration in original) (quoting Darcangelo v. Verizon Communications, 292 F.3d 181, 186–87 (4th Cir. 2002)). One such area of complete preemption are claims under "ERISA's civil enforcement provision, § 502(a)," which is 29 U.S.C. § 1132(a). Id. at 371, 371 n.6. "[T]he legislative history consistently sets out this clear intention to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction . . . ." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987). "Thus, when a complaint contains state law claims that fit within the scope of ERISA's § 502's civil enforcement provision, those claims are converted into federal claims." Darcangelo, 292 F.3d at 187.

    The Fourth Circuit adopted a three-part test to determine if a state law claim is completely pre-empted by 29 U.S.C. § 1132:

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must "fall[] within the scope of an ERISA provision that [it] can enforce via § 502(a)": and (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan.

Sonoco Products Co., 338 F.3d at 372. If a plaintiff's state law claim fails to satisfy any of these elements, it is not completely preempted. See id. at 374 (holding a breach of contract action was not completely preempted because the plaintiff did not have standing). As explained below, Plaintiffs have standing.

    Secondly, Plaintiffs are seeking to "enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan," 29 U.S.C. § 1132(a)(1)(B), by requesting the Court to declare "under the state and/or federal common law doctrine that 'no person shall be permitted to profit from his own wrong,'" (Doc. No. 1, p. 7). Thereby, they seek to clarify that Long is not entitled to benefits under the Policies and name themselves as the beneficiaries of the benefits. Therefore, the claim falls within the scope of ERISA's civil enforcement provisions.

    Finally, the case will involve the interpretation of Thrash's Benefits, each of which may independently qualify as ERISA-governed plans, hence satisfying the third element.

10

Long also contends, this Court's previously ruling determined Long is not to a slayer, and—as a result—Long is the beneficiary under the plan, which moots the question of ERISA preemption. However, this argument misses Plaintiffs' contention entirely. Plaintiffs acknowledge Long is legally not a "slayer." (Doc. No. 1, p. 5). However, Plaintiffs contend in response to the Motion to Dismiss and in their Motion for Summary Judgment that the equitable doctrine of not profiting from your own wrong precludes Long from receiving the benefits of his mother's plan. Thus, the Court also rejects the mootness argument.

2. Standing

Next, Long asserts Plaintiffs lack standing and are not the real parties in interest in contravention of Federal Rule of Civil Procedure 17(a). He contends North Carolina law considers Thrash's estate to be the real party in interest and the only party with standing. This argument is without merit.

"An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "The real party in interest is the party that has a substantive right that is enforceable under the applicable substantive law." Scheufler v. General Host Corp., 895 F. Supp. 1416, 1418 (D. Kan. 1995). ERISA provides, "A civil action may be brought by a . . . beneficiary . . . to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is *or may become* entitled to a benefit thereunder." Id. § 1002(8) (emphasis added).

Here, Plaintiff Bernadette is named as the 10% beneficiary of Thrash's Optional Life Insurance. As such, she is a real party in interest and has standing.

11

The other Plaintiffs present a more intriguing question. They contend they are entitled to benefits under the policy as beneficiaries of Thrash's will if this Court should find Long ineligible as a beneficiary. In Yarde v. Pan American Life Ins., the Fourth Circuit faced a similar question. See 67 F.3d 298 (4th Cir. 1995) (unpublished table decision). There, the participant in an employee benefits plan went missing and was never heard from again, and his body was never found. Id. at *1. Under relevant state law, his death would not be presumed until seven years elapsed. Id. Before the seven-year period elapsed, the sole beneficiary under the participant's employee benefits plan died. Id. Subsequently, after the period elapsed, the beneficiary's sole heir requested payment of the participant's life insurance benefits. Id. The district court awarded the sole heir the $8,000 death benefit. Id. at *2. The question of standing was appealed, and the Fourth Circuit held the sole heir had "derivative standing" despite not being named in the participant's employee benefits plan as a beneficiary. Id. at *5–*6. It noted:

> The fact that each case to apply the derivative standing doctrine has done so where the claimant was a health care provider does not discourage us from employing the theory to the facts of this case. We find no principled way to distinguish between the health care provider who stands in the shoes of a plan participant or beneficiary and [the sole heir] who . . . stands in the shoes of [the beneficiary]. Treating [the sole heir] as [the beneficiary]'s assignee is as legitimate, in light of her testamentary wishes, as recognizing a hospital as the assignee of a patient covered under an ERISA-governed welfare plan.
>
> Application of the derivate standing doctrine in this limited instance provides us with the greatest assurance that we can adhere to ERISA's fundamental aim of protecting the interests of plan participants and their beneficiaries. We believe that '[a]n insurance company should not be allowed to deny . . . benefits merely because the participant and beneficiary of the health plan have died.'"

Id. at *6 (third alteration in original) (quoting Cottle v. Metropolitan Life Ins., No. 29-C-1452, 1993 WL 8201, at *1 (N.D. Ill. Jan. 13, 1993)).

Also facing "unusual circumstances surrounding [the participant]'s death" in this case, see id., applying the doctrine of derivative standing to the other Plaintiffs (excluding Bernadette) is appropriate. As prospective heirs of Thrash, they may become entitled to the benefits of Thrash's Benefits if Long is determined to be ineligible. Therefore, the Court finds they are also real parties in interest and have standing.

   3. Res Judicata

Long also argues Plaintiffs' case is barred by the doctrine of *res judicata*. He contends in the prior case of Midland National Life Ins. v. Long, No. 3:18-cv-00672, 2021 WL 3476139 (W.D.N.C. Aug. 6, 2021) ("Midland Case"), the court in an opinion issued by the undersigned determined Long was not the slayer and federal common law did not apply.

"For *res judicata* to apply, the following three elements must be met: '(1) [a] final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits.'" Id. at *6 (alteration in original) (quoting Pueschel v. United States, 369 F.3d 345, 354–55 (4th Cir. 2004)).

*Res judicata* does not apply here for several reasons, any one of which is sufficient to reject Long's argument. First, there was not a final judgment on the merits in Midland as the case settled prior to the Court's ruling on a motion for summary judgment and a trial. Second, the suits are not identical. In Midland, the plaintiff insurance company sought a declaratory judgment to declare Long as the slayer. Id. Here, Plaintiffs seek declaratory judgment to declare that Long is not entitled to any of Thrash's benefits due to the common law doctrine that no person should be permitted to profit from his own wrong. These are two separate questions. See id. at *7 ("However, qualification as a slayer under the statute is not the sole obstacle preventing Defendant

13

Long from receiving the . . . funds."). Third, the parties are not identical. Other than Plaintiff Bernadette, Plaintiffs were not involved in the prior action. Additionally, neither the Lincoln Defendants, nor Colliers, nor Principal Life were involved in that litigation. Even further, neither Midland National Life Insurance Company nor the Estate of Marcella Lightner Thrash are not involved in this action.

Therefore, Long's *res judicata* argument is without merit.

4. Judicial Discretion to Abstain from Exercising Jurisdiction

Long contends the Court should abstain from exercising jurisdiction pursuant to 28 U.S.C. § 2201.[6] The Court does not find this argument persuasive and rejects it.

**B.     Motion for Summary Judgment**

Having decided that dismissal of the Complaint is not appropriate, the Court turns to Plaintiffs' Motion for Summary Judgment. In support of their motion, Plaintiffs contend no genuine issue of material fact exists as to Long's wrongdoing and, accordingly, Long cannot profit from his victim's insurance benefits as a matter of law.

1. Statute of Limitations

Long asserts the defense of the statute of limitations and argues the Court's prior ruling in the Midland Case concluding the statute of limitations barred the wrongful death claim asserted by the Estate against Long to be barred also bars the claims here because the wrongful death forms the basis for declaratory relief in this action. Long misconstrues the Court's prior ruling in the

---

[6] 28 U.S.C. § 2201(a) provides

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Midland Case.  There, this Court dismissed the wrongful death crossclaim as outside the statute of limitations; however, it did not find the statute of limitations to bar the declaratory judgment claim as to the beneficiary of the insurance proceeds.  See Midland Nat'l Life Ins. Co., 2021 WL 3476139, at **6-7 ("Since the statute of limitations bars the wrongful death claim, there is no statutory right to damages. Therefore, only the interpleader funds remain in dispute.").  Long neither asserts nor argues the applicable statute of limitations under ERISA or the policy terms have expired for the instant case.  Long has failed to show the statute of limitations bars the instant action.

    2.  Merits of Claim

As explained above, the parties agree Long is legally not a "slayer" under North Carolina's slayer statute because he was found not guilty by reason of insanity in the criminal case.  See N.C. Gen. Stat. § 31A-3(3).  Plaintiffs contend, however, that notwithstanding the inapplicability of North Carolina slayer statute to the facts here, federal common law precludes Long's ability to recover the ERISA proceeds.

As an initial matter, the undisputed facts show that Long killed Thrash.  Long does not appear to contest this evidence, but instead directs the Court that disputed material facts exist as to whether Long is a "slayer" under the statute.  Having determined as a matter of law that Long is not a slayer, those disputed facts are not material. Accordingly, the uncontroverted record before the Court indicates that Long admitted to killing Thrash multiple times, including during the criminal investigation, (Doc. No. 30-2), and in discovery responses in the Midland Case, (Doc. No. 30-5), and Long was adjudicated to have "committed the homicide" of Thrash, although he "could not appreciate the wrongfulness of his actions at the time," (Doc. No. 30-4).

15

Federal law recognizes that the beneficiary's claim is barred by the equitable defense: "No person should be permitted to profit from his own wrong." Prudential Ins. Co. of Am. v. Tull, 690 F.2d 848, 849 (4th Cir. 1982) (barring recovery of the proceeds of a life insurance policy by a beneficiary who had killed the insured; citations omitted). Accordingly, "federal common law compels the court to deny [the wrongdoer] access to his victim's life insurance policy." UNUM Life Ins. Co. of Am. v. Mack, No. 3:04CV247-MU, 2011 WL 2470668, at *2 (W.D.N.C. June 21, 2011); see also Addison v. Metro. Life Ins. Co., 5 F.Supp.2d 392, 393–94 (W.D. Va. 1998) (noting "federal courts have consistently held that, as a matter of federal law, a beneficiary convicted of murdering the insured is precluded from recovering the insurance proceeds;" and "other federal courts have invoked the same equitable concept in the context of policies issued pursuant to ERISA;" (collecting cases)); Atwater v. Nortel Networks, Inc., 388 F. Supp. 2d 610, 615 (M.D.N.C. 2005).

In Mack, the court concluded that notwithstanding any application of North Carolina's slayer statute, federal common law precluded the decedent's life insurance beneficiary from receiving the life insurance benefits because the beneficiary had stabbed the decedent. 2011 WL 2470668, at *2. The Atwater case similarly recognized that federal common law is an alternative theory to the slayer statute, and application of the common law principle can preclude a beneficiary from receiving ERISA proceeds. 388 F. Supp. 2d at 615 ("As the convicted murderer of the plan participant, Michael Peterson would have been barred from recovering the deceased's ERISA benefits under either North Carolina's slayer statute *or* under federal common law." (Emphasis added.)). Finally, this Court has also recognized that qualification as a slayer "is not the sole obstacle" to prevent a wrongdoer from receiving insurance proceeds as both North Carolina and

16

federal common law prevent a person from being allowed to profit by his own wrong. Midland Nat'l Life Ins. Co., 2021 WL 3476139, at *7 ("In North Carolina, a person can be barred from receiving life insurance proceeds by: (1) N.C. Gen. Stat. § 31A-3 (the slayer statute) *or* (2) the common law rule that no one may profit from their own wrongdoing." (Cleaned up; emphasis added)); see also State Farm Life Ins. Co. v. Allison, 493 S.E.2d 329, 330 (1997); Quick v. United Benefit Life Ins. Co., 213 S.E.2d 563, 569 (1975); N.C. Gen. Stat. § 31A-15.

This principle applies notwithstanding the fact Long was adjudicated not guilty by reason of insanity. Even an unintentional killing can preclude a wrongdoer from profiting from his wrong. Applying North Carolina common law, the Fourth Circuit explained that "one responsible for the death of another cannot profit by his own wrongdoing." St. Paul Fire & Marine Ins. Co. v. Lack, 476 F.2d 583, 586 (4th Cir. 1973). In that case, the husband admitted to shooting and killing his wife during a marital dispute, and—in deciding an insurance coverage dispute—the jury determined the husband "unintentionally" killed his wife, thus requiring the insurance company to defend him for the underlying wrongful death claim. Ultimately, the jury awarded damages for the wrongful death claim, and the Fourth Circuit ruled that the husband could not share in those damages and reduced them by his statutory share. Id. (noting the other beneficiaries of the claim could recover their share of the damage award; also holding the North Carolina slayer statute did not apply because the jury found killing to be unintentional). Under applicable law, it appears it is the person "responsible" who "cannot profit," id., and the criminal intent—or *mens rea*—does not control.

For these reasons, the Court concludes that no dispute of material fact exists as to whether Long was responsible for Thrash's death, and therefore—as a matter of law—Long cannot benefit

17

from his wrongdoing as a beneficiary of Thrash's Benefits. Summary judgment for Plaintiffs on this issue is therefore appropriate.

## V. Conclusion

IT IS THEREFORE ORDERED that Long's Motion to Dismiss, (Doc. No. 26), is DENIED, and Plaintiffs' Motion for Partial Summary Judgment, (Doc. No. 30), is GRANTED.

IT IS FURTHER ORDERED that within fourteen (14) days, the parties shall confer and discuss any remaining issues in this matter. The Court notes the deadline for filing dispositive motions expired on March 15, 2023, and the Court hereby sua sponte extends that deadline. Should the parties seek to resolve any remaining issues via dispositive motions, those motions should be filed no later than April 20, 2023, and shall be limited to 3,000 words. Response briefs shall be governed by the Local Rules. Otherwise, the scheduling order remains in place.

IT IS SO ORDERED.

Signed: March 28, 2023

Frank D. Whitney
United States District Judge